NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

 v.

ENVIRO BOARD CORPORATION,
GLENN  B. CAMP, WILLIAM J. PEIFFER,
and JOSHUA D. MOSSHART,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 16-6427-R

ORDER DENYING DEFENDANT
JOSHUA D. MOSSHART'S MOTION TO
SET ASIDE ENTRY OF DEFAULT AND
GRANTING PLAINTIFF SECURITIES
AND EXCHANGE COMMISSION'S
MOTION FOR DEFAULT JUDGMENT

   Before the Court is Defendant Joshua D. Mosshart's ("Mosshart") Motion to Set Aside Entry of Default, which was filed on February 6, 2017 (Dkt. No. 26), and Plaintiff Securities and Exchange Commission's ("Plaintiff" or "SEC") Motion for Default Judgment (Dkt. No. 22). Having been briefed by both parties, this Court took these matters under submission on December 19, 2016 and March 15, 2017.

   The instant lawsuit concerns securities offerings of Enviro Board Corporation ("Enviro Board"), which Plaintiff alleges were fraudulent and unregistered.  Plaintiff filed the Complaint against Mosshart and Co-Defendants Enviro Board, Glenn B. Camp, and William J. Peiffer on August 26, 2016.  (Dkt. No. 1).  The Complaint alleges that Mosshart violated Sections 5(a) and

5(c) of the Securities Act and Section 15(a) of the Exchange Act when he referred to Enviro Board at least 18 individuals who purchased approximately $5 million of the company's securities. Plaintiff served Mosshart with copies of the Summons and Complaint on September 9, 2016. Mosshart failed to timely respond to the lawsuit.  Subsequently, on October 4, 2016, Plaintiff filed a Request for the Clerk to Enter Default Against Defendant Joshua D. Mosshart.  (Dkt. No. 14). On October 7, 2016, the Clerk entered default against Mosshart.  (Dkt. No. 15).

**Mosshart's Motion to Set Aside Entry of Default**

With his Motion, Mosshart seeks to set aside entry of default on several bases: (1) he did not understand Civil Procedure; (2) he could not afford an attorney; (3) he did not believe he was being sued as an individual in this lawsuit; (4) he believed the instant lawsuit was related to a separate and larger lawsuit against Enviro Board; and (5) he is experiencing financial hardship and duress.  Each basis lacks merit.

"[A] court may set aside an entry of default for good cause . . . ."  Fed. R. Civ. P. 55(c). While there is a strong public policy in favor of deciding cases on the merits, it is in the court's discretion whether to set aside an entry of default.  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), overruled on other grounds by *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).  In considering whether good cause exists to set aside an entry of default under Rule 55(c), courts consider the same factors used in a determination to set aside an entry of default judgment under Rule 60(b).  *U.S. v. Assorted Firearms*, 605 Fed. App'x 603, 605 (9th Cir. 2015).  Courts must consider "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default."  *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  While Plaintiff concedes that it is unlikely to be prejudiced by Mosshart's delay in responding to this lawsuit, Mosshart fails to sufficiently establish that he has a meritorious defense and that his conduct was not culpable.

First, Mosshart fails to meet his burden to show a meritorious defense.  In his Motion, Mosshart argues that he did not sell securities, that he only provided arms-length referrals, and that his conduct was approved by his then-employer LPL Financial LLC ("LPL") where approval was required.  As such, Mosshart contends that he did not violate Sections 5(a) and 5(c) of the

1    Securities Act or Section 15(a) of the Exchange Act.  However, in support of these assertions,

2    Mosshart only provides declarations from two investors in Enviro Board, Roy Christofferson and

3    Richard Mosshart.  As stated above, Plaintiff is alleged to have referred at least *18* individuals to

4    Enviro Board.  While the burden on the moving party to show a meritorious defense is relatively

5    low, *Hawaii Carpenters' Trust Funds v. Stone*, 749 F.2d 508, 513 (9th Cir. 1986), the mere two

6    declarations Mosshart proffers, one from his father, are simply insufficient to meet his burden

7    here.  Therefore, this factor weighs against setting aside entry of default.

8        Second, Mosshart fails to establish that his failure to respond was not culpable.  If a

9    defendant has notice of the filing of an action against her and intentionally fails to answer, her

10   conduct is culpable.  *TCI Group Life Ins. Plan*, 244 F.3d at 697.  Mosshart claims he was not

11   personally served.  The record shows otherwise.  Plaintiff filed a Proof of Service demonstrating

12   that it properly served Mosshart pursuant to Federal Rules of Civil Procedure 4(e)(2)(B).  (Dkt.

13   No. 12).  Mosshart also claims that he did not understand that he was being sued as an individual

14   in this case and that he believed the instant lawsuit related to a separate and larger lawsuit against

15   Enviro Board.  The Court is unpersuaded.  The Complaint clearly and unambiguously put

16   Mosshart on notice that he had been individually charged with violating the federal securities

17   laws.  For example, page three of the complaint states, "Defendants Camp, Mosshart and Enviro

18   Board have violated the securities registration provisions of Section 5 of the Securities Act; and

19   Defendant Mosshart has violated the broker-dealer registration provisions of Section 15 of the

20   Exchange Act."  It is simply beyond reason that Mosshart would conclude the lawsuit did not

21   pertain to him individually.  Finally, Mosshart's remaining bases for excusable conduct—that he

22   does not understand the federal rules of civil procedure, that he could not afford an attorney, that

23   he is experiencing financial hardship—are equally without merit.  Mosshart was put on notice that

24   he was being sued in early September and chose not to participate in the action for months despite

25   conceding that he became aware of the lawsuit as early as October 8, 2016.  Accordingly, this

26   factor likewise weighs against setting aside entry of default.

27       For the reasons stated above, the Court declines to set aside entry of default.

28   / / /

**Plaintiff's Motion for Default Judgment**

It is within a court's discretion to enter default judgment. *Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir. 1986). "[A] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A court may enter default judgment upon a party's application when the defendant fails to defend itself, and if necessary the court may conduct an investigation and accounting into the damages or any other matter. Fed. R. Civ. P. 55(b)(2). In order to obtain default judgment, a party must first receive an entry of default by the clerk. Furthermore, under Local Rule 55-1 a party seeking default judgment must note: (a) when and against what party the default was entered; (b) the identification of the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) the Servicemembers Civil Relief Act does not apply; and (e) that notice has been served on the defaulting party if required.

Here, Plaintiff is not requesting relief different from or greater than those requested in the Complaint. The Clerk entered default against Mosshart on October 7, 2016. Additionally, Plaintiff filed a declaration satisfying the requirements of Local Rule 55-1. Plaintiff satisfied the procedural requirements necessary for entry of default judgment.

The Ninth Circuit articulated the following factors for courts to consider in determining whether default judgment should be granted: (1) the sufficiency of the complaint; (2) the merits of the plaintiff's substantive claim; (3) the possibility of prejudice to the plaintiff if relief is denied; (4) the possibility of dispute as to any material facts; (5) whether default resulted from excusable neglect; (6) the strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits; and (7) the amount of money at stake. *Eitel*, 782 F.2d at 1471-72. Here, the *Eitel* factors weigh in favor of granting default judgment.

As stated above, Plaintiff alleges two causes of action against Mosshart: (1) unregistered offer and sale of securities in violation of Sections 5(a) and 5(c) of the Securities Act; and (2) inducing and attempting to induce the purchase or sale of securities without being registered with the SEC in violation of Section 15(a) of the Exchange Act. Both causes of action arise from

4

1    Mosshart's alleged conduct in referring to Enviro Board at least 18 individuals who purchased

2    approximately $5 million of the company's securities.

3          A plaintiff must state a claim upon which he may recover in order for a Court to grant a

4    motion for a default judgment. *Sony Music Entertainment v. Elias,* 2004 WL 141959 (C.D. Cal.

5    Jan. 20, 2004); *Pepsico, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

6    Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true.

7    *TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir. 1987).  On the other hand, a

8    defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.

9    *Wecosign, Inc. v. IFG Holdings, Inc*., 845 F. Supp. 2d 1072 (C.D. Cal. 2012).

10          The first two *Eitel* factors consider the sufficiency of the pleadings and the substantive

11    merit of the claim.  The complaint is sufficient if it meets the pleading standards of *Iqbal* and

12    *Twombly*.  Here, the Complaint provides sufficient factual bases for both causes of action against

13    Mosshart.  First, Sections 5(a) and 5(c) of the Securities act prohibit unregistered offer and sale of

14    securities in interstate commerce. Title 15 U.S.C. §§ 77e(a) & 77e(c).  A prima facie claim under

15    Section 5 requires Plaintiff to show: (1) Mosshart directly or indirectly sold or offered to sell

16    securities; (2) no registration statement was in effect as to the securities; and (3) the sale or offer

17    was made through interstate commerce.  *Id.*  Each element is satisfied here.  The Complaint

18    alleges that Mosshart was hired to raise capital for Enviro Board and referred at least 18

19    individuals to Enviro Board, who then invested approximately $5 million in the company.  The

20    Complaint further alleges that the instruments sold by Mosshart were securities.  The investments

21    took the form of common stock, secured or unsecured bonds, and promissory notes—such

22    instruments meet the definition of a security as provided by Section 2(a)(1) of the Securities Act

23    and Section 3(a)(10) of the Exchange Act.  Moreover, the Complaint alleges that neither Mosshart

24    nor the Co-Defendants registered with the SEC any of the securities that Mosshart offered or sold.

25    In support of this allegation, Plaintiff provides an attestation by the SEC's Office of Records

26    Management Services stating that a search of the Commission's files shows that Enviro Board has

27    not registered with the Commission any transactions or securities since the company's March 27,

28    1997 inception.  Finally, the Complaint alleges that Mosshart directly solicited investors via e-

mail, by telephone and through in-person meetings.  As such, Mosshart offered and sold Enviro Board securities through the use of interstate transportation or communication of the mails.  Since Mosshart fails to demonstrate that an exemption from the registration requirements applies, this Court finds the Complaint sufficiently states a claim under Section 5(a) and 5(c) of the Securities Act.

Section 15(a) of the Exchange Act requires brokers or dealers who "effect any transaction in, or induce to or attempt to induce the purchase or sale of, any security" through the use of the mails or any means or instrumentality of interstate commerce, to be registered with the SEC or, if the broker or dealer is a natural person, to be associated with a registered broker or dealer that is not a natural person.  15 U.S.C. § 78o(a).  The Complaint alleges that Mosshart was a broker as that term is defined by Section 3(a)(4)(A) of the Exchange Act.  Under Section 3(a)(4)(A), the term "broker" includes "any person engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78c(A)(4)(A).  The Complaint alleges that Mosshart solicited Enviro Board investors, provided those investors with Enviro Board's offering materials, and participated in taking investors' orders.  This conduct brings Mosshart within the definition of a "broker" under Section 3(a)(4)(A).  Finally, the Complaint alleges that while Mosshart was associated with LPL, a registered broker-dealer, in the relevant period, he was not acting within the scope of his employment with LPL when he solicited Enviro Board investors.  Specifically, the Complaint alleges that LPL was unaware and did not approve of Mosshart's conduct, and was therefore not supervising him for purposes of his sale of Enviro Board's securities.  For these reasons, the Complaint sufficiently states a claim under Section 15(a) of the Exchange Act.  Accordingly, the Court finds the first two *Eitel* factors favor entry of default judgment.

The third *Eitel* factor considers the possibility of prejudice to the plaintiff if default is not entered.  As discussed above, Plaintiff concedes that it will not be prejudiced if default is not entered.  As such, this factor weighs against entry of default judgment.

The fourth *Eitel* factor considers the possibility that material facts are in dispute.  Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *TeleVideo*, 826 F.2d at 917-18.  Here, taking the factual allegations as true, there is no

possibility of dispute of any material fact. As detailed above, the facts alleged in the Complaint establish that Mosshart violated the federal securities laws. The Complaint leaves no room for dispute.

The fifth *Eitel* factor considers whether the defendant's failure to respond could be a result of excusable neglect. As already discussed above, Mosshart's failure to timely respond was not the result of excusable neglect. Accordingly, this factor weighs in favor of default judgment.

The sixth *Eitel* factor takes into account the strong public policy in favor of deciding cases on the merits. Notwithstanding this strong policy, "a decision on the merits is impracticable, if not impossible, when the defendant takes no part in the action." *Weeks v. Fresh-Pic Produce Co.*, 2012 WL 1815648, at *4 (S.D. Cal. May 17, 2012). Mosshart failed to respond in any way to this action for months after being served with the Summons and Complaint. Mosshart's unwillingness to diligently participate in this case makes a decision on the merits impracticable at best. Accordingly, the sixth *Eitel* factor weighs in favor of entry of default judgment.

The final *Eitel* factor "examines the amount of money at stake in relation to the seriousness of a defendant's conduct." *Wecosign, Inc.*, 845 F. Supp. 2d at 1082. A court may exercise its equity power to require a defendant in an SEC enforcement action to disgorge his ill-gotten gains. *SEC v. Rind*, 991 F.2d 1486, 1492-93 (9th Cir. 1993). Plaintiff seeks an order requiring Mosshart to disgorge $553,355 in ill-gotten gains, together with $56,984.14 in prejudgment interest, for a total amount of $610,339.14. As explained above, Mosshart illegally sold at least $5 million in securities. This Court finds that the $610,339.14 Plaintiff seeks in disgorgement is commensurate with the seriousness of Mosshart's misconduct.

Plaintiff seeks three forms of relief: (1) a judgment permanently enjoining Mosshart from future violations of Sections 5(a) and 5(c) of the Securities Act and Section 15(a) of the Exchange Act; (2) an order requiring Mosshart to disgorge $553,355 in ill-gotten gains, together with $56,984.14 in prejudgment interest, for a total amount of $610,339.14; and (3) an order requiring Mosshart to pay a civil penalty in an amount to be determined by the Court upon a noticed motion. The Court finds that Plaintiff is entitled to each of its claims for relief. First, Plaintiff is entitled to a permanent injunction against Mosshart. Section 20(b) of the Securities Act and Section 21(d) of

7

1   the Exchange Act provide that, upon proper showing, a permanent injunction shall be granted in

2   an enforcement action brought by the SEC.  *See* 15 U.S.C. §§ 77t(b) and 78u(d)(1).  To obtain an

3   injunction, the SEC must establish that there is a reasonable likelihood of future violations.  *SEC*

4   *v. Murphy*, 626 F.2d 633, 636 (9th Cir. 1980).  Whether a likelihood of future violations exists

5   depends upon the totality of the circumstances.  *Id*.  The existence of past violations may give rise

6   to an inference that there will be future violations.  *Id*.  Here, the Court finds a reasonable

7   likelihood exits that, absent a permanent injunction, Mosshart may commit future security

8   violations.  Mosshart failed to timely respond to this lawsuit and has likewise failed to

9   acknowledge the wrongful nature of his conduct.  Moreover, Mosshart's misconduct was not

10  limited to a single isolated incident.  Mosshart illegally sold Enviro Board securities for at least an

11  18-month period.  As such, a permanent injunction against Mosshart is appropriate here.

12          Next, disgorgement of Mosshart's ill-gotten gains is appropriate here.  This Court has

13  broad equity powers to order the disgorgement of ill-gotten gains obtained through a defendant's

14  violation of the federal securities laws.  *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1186,

15  1191 (9th Cir. 1998).  When seeking disgorgement, the SEC only needs to present evidence of a

16  "reasonable approximation" of the defendant's ill-gotten gains.  *Id*. at 1096.  Here, Plaintiff

17  provides Enviro Board's bank records showing that Enviro Board paid Mosshart $553,355 from

18  May 11, 2011 through May 9, 2013.  This is sufficient to meet Plaintiff's burden of presenting

19  evidence demonstrating a reasonable approximation of Mosshart's ill-gotten gains.  Accordingly,

20  $553,355 is the appropriate amount of disgorgement.  The Court likewise finds Plaintiff's

21  $56,984.14 prejudgment interest figure correct.  Therefore, Mosshart is ordered to pay the total

22  amount of disgorgement and prejudgment interest in the amount of $610,339.14.

23          Lastly, because the Court finds that Mosshart violated the Securities Act and the Exchange

24  Act, he is also liable for penalties under Section 20(d)(1) and Section 21(d)(3)(A) of those acts,

25  respectively.  *See* 15 U.S.C. §§ 77t(d)(1) & 78u(d)(3)(A).  The Court will assess the appropriate

26  amount of the civil penalty to be paid when Plaintiff submits its separate motion detailing its

27  position on the issue.

28  / / /

8

On the whole, the *Eitel* factors favor entry of default judgment in this case.  Therefore, Plaintiff's Motion is granted.

**IT IS HEREBY ORDERED** that Defendant Joshua D. Mosshart's Motion to Set Aside Entry of Default is DENIED.  (Dkt. No. 26).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment is GRANTED.  (Dkt. No. 22).

Dated: May 9, 2017.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

9